Wanda DOCKINS and Lonzo Dockins,
Plaintiffs–Appellees,

v.

BALBOA INSURANCE COMPANY,
Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

Jan. 9, 1989.

Charles F. Sterchi, III, Debra L. Fulton, Carpenter & O'Connor, Knoxville, for defendant-appellant.

John M. Norris, Taylor & Groover, Knoxville, for plaintiffs-appellees.

## OPINION

DROWOTA, Justice.

Plaintiffs-appellants, Wanda and Lonzo Dockins, have sued under their uninsured motorist coverage for injuries suffered by Mrs. Dockins. Defendant Balboa Insurance Company denied coverage by virtue of certain household exclusions in the policy, and the trial court granted summary judgment in its favor. The Court of Appeals reversed, and we granted an appeal to consider whether these exclusions were rendered invalid by a revision of the governing statutes in 1982.

Mrs. Dockins was injured while a passenger in her husband's vehicle and by the negligence of Jimmy Moore, who was driving the car with her permission. This was, it appears, a one-car accident. The vehicle was listed on the declarations page of the Balboa policy, and for purposes of the uninsured motorist part of the policy, Mrs. Dockins was an owner and an insured. The policy provided the minimum, identical amounts of liability and uninsured motorist coverages, as well as a small medical expense coverage.

Under the uninsured motorist portion, the policy provides:

> We will pay applicable sums which a person insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a person insured caused by accident and arising out of the ownership, maintenance or use of an uninsured motor vehicle.

It further provides in this part, under "Exclusions," "this policy does not apply ... to damages because of bodily injury caused by a motor vehicle owned by you or a family member."

The plaintiffs allege that Jimmy Moore has no liability insurance, and the parties also presume that the liability part of the Dockins' policy, which insured anyone driving with permission, excludes coverage for injuries to named insureds. The plaintiffs reason then, that if the injuries to Mrs. Dockins are excluded from coverage, the vehicle becomes an "uninsured" vehicle, within the meaning of the statute, if not within the meaning of the insurance policy.

A similar argument was made, and rejected, in *Holt v. State Farm Mutual In-*

*surance Co.,* 486 S.W.2d 734 (Tenn.1972), where this Court held that a policy definition of "uninsured motor vehicle" that excluded the vehicles upon which the policy was written did not contravene the applicable statute. That is, in requiring that uninsured motorist coverage be offered with every automobile liability policy, the Legislature had not required the carrier to provide coverage in situations that it unquestionably could exclude from liability coverage, namely, injuries to the insured caused by his own negligence or that of a family member or permittee.[1]

The Court of Appeals acknowledged that under *Holt* the exclusions in the Dockins' policy would be given effect, but construed a 1982 amendment to T.C.A. § 56–7–1202 to require a different result. The amendment relied upon was part of a complete re-drafting of sections 56–7–1201 and 1202, 1982 Tenn.Pub.Acts Ch. 835, which was codified as follows:

> (a) Every automobile liability insurance policy delivered, issued for delivery, or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

> (1) The limits of such uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

> (2) Provided, however, that any named insured may reject in writing such uninsured motorist coverage completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55–12–107. Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto. Unless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of such policy, or the transfer of vehicles insured thereunder, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, however, that whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction the provisions of this section shall apply in the same manner as when a new policy is being issued.

> (3) Any umbrella insurance policy that includes automobile liability insurance shall comply with the provisions of this section so long as the underlying limits of uninsured motorist coverage are equal to the underlying limits of automobile liability insurance.

> (b) With respect to bodily injury to an insured at a time when such insured is not occupying any motor vehicle, the insurance on the vehicle owned by the insured that provides the highest limits of uninsured motorist coverage shall apply. With respect to bodily injury to an insured while occupying a motor vehicle owned by such insured, only the limits of uninsured motorist coverage on the vehicle in which the insured was an occupant shall apply. The limits of uninsured motorist coverage shall not be increased because of multiple motor vehicles whether covered under a single policy or multiple policies, and in no event shall the total amount of recovery from all policies and bonds, including any amount

---

**1.** *See also Shambely v. Walls,* 600 S.W.2d 247 (Tenn.App.1980). Exclusions while an insured is occupying an owned, but not insured, vehicle were upheld in *Hill v. Nationwide Mutual Insur-*ance Co., 535 S.W.2d 327 (Tenn.1976), and in *Graves v. Tennessee Farmers Mutual Insurance Co.,* 671 S.W.2d 841 (Tenn.App.1984), and rest on a slightly different rationale.

recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage. With respect to bodily injury to an insured while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:

(1) The uninsured motorist coverage on the vehicle in which the injured party was an occupant shall be primary;

(2) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from the insurance on the vehicle owned by the insured that provides the highest limits of uninsured motorist coverage. In no instance shall more than one (1) coverage from more than one (1) uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.

. . . .

(d) The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

. . . .

T.C.A. § 56–7–1201 (Supp.1982) (subsections c, e, and f omitted).

For the purpose of this coverage, the term "uninsured motor vehicle" means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

T.C.A. § 56–7–1202 (Supp.1982).

Before the 1982 amendments sections 56–7–1201 and –1202 read as follows:

No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than limits for bodily injury or death described in § 55–12–107, subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage; provided further that, unless the named insured requests such coverage in writing, the coverage need not be provided in or supplemental to, a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

Effective September 1, 1974, every insured purchasing or renewing a policy of insurance under the provisions of the first paragraph of this section shall be provided an opportunity to also purchase uninsured motorist insurance limits greater in amount than the requirements of § 55–12–107. However, no insurer may be required to offer limits of uninsured motorist insurance greater in amount than the bodily injury liability limits purchased by the insured. *Such uninsured motorist insurance shall include "underinsured motorist" insurance as defined herein. The term "underinsured motorist" means the operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured mo-*

*torist coverage; provided that, the "per person" limit of the insured's uninsured motorist coverage shall apply to the insured and/or to a member of his/her immediate family while an occupant in a cooperative use vehicle where the insured's uninsured motorist coverage is greater than the "per passenger" share of all applicable liability insurance available at the time of the accident, and the limits of such applicable liability insurance have been exhausted by payment of judgments or settlements.* Every insured purchasing insurance under the provisions of the first paragraph of this section shall be provided an opportunity to include damages to property in excess of two hundred dollars ($200).

. . . .

T.C.A. § 56–7–1201 (1980) (emphasis added, final two paragraphs omitted).

For the purpose of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

T.C.A. § 56–7–1202 (1980).

As can be seen "uninsured motor vehicle" was not comprehensively defined. In the original act section 56–7–1202, formerly section 56–1149, simply included as uninsured those vehicles on which there was appropriate liability coverage, but for which funds were unavailable to the injured insured because of the insurer's insolvency. And even that attempted definition was, and is, elsewhere limited. *See* T.C.A. § 56–7–1203. In 1974 section 56–7–1201 was amended to include "underinsured motorists," 1974 Tenn.Pub.Acts Ch. 697, a term that was later qualified with reference to cooperative use vehicles. 1977 Tenn.Pub.Acts Ch. 359.

These partial definitions were deleted by the 1982 amendments, and the substituted section 56–7–1202 eliminated the terms "insolvency" and "underinsured" and the pro-

viso for cooperative use vehicles. It appears to us the Legislature simply combined those two categories in a single paragraph to require coverage by the insured's own insurer when the funds to which she is entitled from other policies, bonds, and securities cannot be collected. The reference to collectibility also appears in the last paragraph of section one of the amendment, now T.C.A. 56–7–1201(d).

And this is precisely what the legislative history suggests. Senate Record No. 52 at 12–23 (March 11, 1982). Senator Davis, the sponsor, explained the revision of section 56–7–1202 as the elimination of the term "underinsured," which had, he said, been the subject of some confusion and misunderstanding. In an unmistakeable reference to our decision in *Rogers v. Tennessee Farmer's Mutual Insurance Co.*, 620 S.W. 2d 476 (Tenn.1981), the previous year, the Senator explained that under then-existing law an injured insured was not protected by her uninsured motorist coverage so long as the at-fault driver carried the per-person and per-accident limits established by the Financial Responsibility Act—even though the per-accident amount might be divided with several other injured persons and she did not receive the amount of her uninsured motorist limits.

The redrafting eliminated all the terminology and phrases upon which the *Rogers* decision relied. There was no discussion at all of the exclusions previously approved and frequently included in policies written in this State.

Moreover, the remainder of the 1982 enactment belies any conclusion the Legislature intended to transform uninsured motorist requirements into broad coverage, amounting, in effect, to personal injury protection. The second paragraph of section one, now T.C.A. § 56–7–1201(b), forbids in some situations and restricts in others the "stacking" of separate coverages, or cumulation of benefits from separate policies. This approach does not suggest the expansive interpretation of uninsured motorist coverage given elsewhere. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Nester*, 459 So.2d 787 (Miss.

1984) (permitting owner/passenger to recover cumulatively on four coverages, when her authorized driver caused an accident).

Reading the amendment as a whole and in light of its predecessor and its legislative history, we conclude the Legislature did not intend to eliminate the kind of exclusion upon which the defendant in this case relies. Recently, the Legislature has expressly adopted exclusions of this nature. 1988 Tenn.Pub.Acts 769 (codified at T.C.A. § 56–7–1202(b)(1) and (2) (Supp.1988)). We find nothing in that action and debate, albeit remote, to cast doubt on the conclusion reached here. Accordingly, defendant Balboa was entitled to summary judgment, as granted by the trial court, and that judgment is hereby reinstated. Costs should be taxed to Appellees.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.