# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 16, 2012 Session

## DONNA CLARK v. SPUTNIKS, LLC ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Sumner County**
**No. 31663-C      C.L. Rogers, Judge**

_____

**No. M2010-02163-SC-R11-CV - Filed May 30, 2012**

_____

AND

## LEONARD GAMBLE v. SPUTNIKS, LLC ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Sumner County**
**No. 31525-C      C.L. Rogers, Judge**

_____

**No. M2010-02145-SC-R11-CV - Filed May 30, 2012**

_____

In these consolidated cases, the primary issue is whether there is liability insurance coverage for the plaintiffs' injuries resulting from an altercation on the premises of the insured's bar and restaurant. The insurer denied coverage and declined to defend the insured based on its determination that there was no coverage under the terms of the policy. We hold that based on the clear terms of the policy agreement, there is no liability coverage because the incident arose from an assault and battery, which was an excluded cause, and because there is no nonexcluded concurrent cause to provide coverage. We further hold that estoppel by judgment does not apply to collaterally estop the insurer from arguing the lack of coverage. The judgment of the trial court is reversed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Russell E. Reviere and Jonathan D. Stewart, Jackson, Tennessee, for the appellant, QBE Insurance Company.

William B. Jakes, III, and Mary Martin Schaffner (at trial) Nashville, Tennessee; Joe Dalton, Jr., Hendersonville, Tennessee, for the appellees, Donna Clark and Leonard Gamble.

**OPINION**

**I.**

On September 20, 2007, decedent Samuel Clark, plaintiff Leonard Gamble, and David Smotherman were patrons at Sputniks, a bar and restaurant in Hendersonville. While at Sputniks, Mr. Smotherman assaulted Mr. Clark "by hitting his head repeatedly on a table until he killed him." Mr. Gamble tried to intervene and was allegedly injured in the attempt.[1]

Ms. Clark and Mr. Gamble brought separate tort actions against Sputniks, LLC, and Cristie Phillips, individually and doing business as Sputniks, LLC ("the defendants").[2] The plaintiffs alleged that the defendants engaged in a pattern of conduct encouraging inebriation of Sputniks' patrons and failed to take reasonable steps to protect customers from foreseeable criminal attacks. Neither Sputniks nor Ms. Phillips defended the actions.

At the time of the bar fight, Sputniks was insured by QBE Insurance Corporation ("Insurer") under a liability insurance policy. After Sputniks timely notified Insurer of the lawsuits, Insurer denied coverage and declined to defend the actions. On November 17, 2008, the trial court entered identical orders in both cases stating that "default judgment on the issue of liability is hereby granted to the plaintiff in this cause and the matter shall proceed on the issue of damages, reserved for further hearing." After hearings on February 11 and 18, 2008, the trial court entered final judgments against the defendants, awarding Mr. Gamble $275,000 and Ms. Clark $2,500,000 in compensatory damages.

In an effort to collect the judgments, the plaintiffs brought declaratory actions against Insurer seeking a ruling that Insurer's liability insurance policy provided coverage for the tort

---

[1] These statements are based on allegations in the complaints filed by Mr. Gamble and Donna Clark, the widow of Samuel Clark.

[2] The plaintiffs also sued Mr. Smotherman but later dismissed their case against him.

judgments and also filed a writ of non-wage garnishment against Insurer. Insurer denied there was any insurance coverage under the policy for the plaintiffs' injuries and denied that it owed the plaintiffs any money. Following a hearing, the trial court entered an order on August 24, 2010, finding that the altercation at Sputniks was covered under both the commercial general liability and liquor liability provisions of the policy. The trial court held Insurer liable for satisfaction of the non-wage garnishment writs in the amount of the underlying tort judgments.

Insurer appealed. The Court of Appeals ruled that the liquor liability coverage agreement provided coverage for the judgments but that the commercial general liability agreement provided no coverage. Clark v. Sputniks, LLC, No. M2010-02163-COA-R3-CV, 2011 WL 2135407, at *1 (Tenn. Ct. App. May 25, 2011); Gamble v. Sputniks, LLC, No. M2010-02145-COA-R3-CV, 2011 WL 2135438, at *1 (Tenn. Ct. App. May 25, 2011). We granted Insurer's applications for permission to appeal, ordered the two actions consolidated for purposes of this appeal, and now address two issues: (1) whether Insurer is collaterally estopped by operation of the doctrine of estoppel by judgment from arguing that there is no insurance coverage because of the previously entered default judgments against the defendants in the underlying tort actions, and (2) if Insurer is not collaterally estopped from asserting the coverage issue, whether the policy issued by Insurer to Sputniks provides coverage for the plaintiffs' injuries in the tort actions.

**II.**

By allowing default judgments to be entered against them, the defendants impliedly admitted as true all the material factual allegations contained in the complaints, except the amount of the plaintiffs' unliquidated damages. Patterson v. Rockwell Int'l, 665 S.W.2d 96, 101 (Tenn. 1984); Adkisson v. Huffman, 469 S.W.2d 368, 375 (Tenn. 1971); Warren v. Kennedy, 48 Tenn. (1 Heisk.) 437, 439 (1870). Because the factual allegations of the complaints were conclusively established by the trial court's default judgments, Insurer cannot attack or challenge the facts in a later action. See Home Ins. Co. v. Leinart, 698 S.W.2d 335, 336 (Tenn. 1985); Kelly v. Cherokee Ins. Co., 574 S.W.2d 735, 737-38 (Tenn. 1978); Adkisson, 469 S.W.2d at 375.

The relevant allegations from Ms. Clark's complaint,[3] which are taken as true, are:

> That . . . there was inadequate security or no security at all in Sputniks to prevent or stop the assault on Samuel Clark.

---

[3] As to the causes of action stated against the defendants and the underlying facts, Mr. Gamble's complaint contains allegations identical to those in Ms. Clark's complaint.

-3-

That Cristie Phillips, dba Sputniks, has engaged in a pattern of conduct which encourages inebriation of its patrons, thereby establishing constructive notice of dangerous conditions or potentially dangerous conditions on the premises.

That the failure of Cristie Phillips, dba Sputniks, to provide security exacerbates the potential for dangerous conditions resulting from instances of inebriation of its patrons and, therefore, imposes premises liability for such conditions upon the property occupier and/or owners thereof.

That the defendant Cristie Phillips, dba Sputniks, breached the duty to take reasonable steps to remedy commonly occurring dangerous conditions such as that which came to exist on September 30, 2007, when the decedent was assaulted and beaten to death by defendant David Smotherman.

That the defendant Cristie Phillips, dba Sputniks, breached the duty upon business owners to take reasonable measures to protect customers from foreseeable criminal attacks.

That the defendant Cristie Phillips, dba Sputniks, had actual or constructive notice of such dangerous conditions or the potential for dangerous conditions based upon prior and recurring incidents of the same nature.

That as a proximate result of the negligence of the defendants Cristie M. Phillips, dba Sputniks, LLC, for its [sic] failure to take reasonable steps to protect its customers from foreseeable dangerous conditions, the plaintiff's husband, Samuel Clark[,] was killed.

(Numbering in original omitted).

These facts must be considered in relation to the following provisions of the commercial general liability policy and the liquor liability agreement issued to Sputniks:

**Commercial General Provisions**:
A. This insurance does not apply to actions and proceedings to recover damages for "bodily injury," "property damage" or "personal and advertising injury" arising from the following and the Company is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages:

1.  *Assault and Battery or any act or omission in connection with the prevention or suppression of such acts*; or

2.  *Harmful or offensive contact between or among two or more persons*; or

3.  Apprehension of harmful or offensive contact between or among two or more persons; or

4.  Threats by words or deeds.

B.  *This exclusion applies regardless of the degree of culpability or intent* and without regard to:

1.  Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

2.  The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

3.  *The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.*

(Emphasis added).

> **Liquor liability agreement provisions**:
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies *if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.*  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply.

(Emphasis added).

The trial court ruled that based on the facts alleged in the complaint there was coverage under the general and liquor portions of the policy.  Since the determination of the

scope of insurance coverage is a question of law, U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009), our review is de novo with no presumption of correctness. Harman v. Univ. of Tenn., 353 S.W.3d 734, 736-37 (Tenn. 2011).

**III.**

We must first resolve the issue of whether, after the entry of the default judgments against the defendants, Insurer can argue that there is no insurance coverage available to indemnify the plaintiffs. The plaintiffs contend that Insurer is collaterally estopped from making this argument based on the doctrine of estoppel by judgment. As we observed in Leinart,

> The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of *res judicata*, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.

698 S.W.2d at 336 (footnote omitted)[4]; see also Dickerson v. Godfrey, 825 S.W.2d 692, 695 (Tenn. 1992); Massengill v. Scott, 738 S.W.2d 629, 631-32 (Tenn. 1987). Both sides rely upon this Court's opinion in Kelly, a case involving the issue of estoppel by judgment against an insurance company under facts somewhat similar to those presented here. In Kelly, the plaintiff was attacked, battered, and shot by the insured, Mr. Hemphill. 574 S.W.2d at 736. The insurer, Cherokee Insurance Company, received notice of the lawsuit, denied coverage, and refused to defend Hemphill based on the exclusionary clause of Cherokee's policy "providing no coverage for 'bodily injury or property damage which is either expected or intended from the standpoint of the insured.'" Id. The trial court entered a default judgment against Hemphill. Id. The plaintiff, in a later action seeking to collect from Cherokee on the tort judgment against Hemphill, argued that Cherokee should be collaterally estopped from arguing that Hemphill expected or intended to harm the plaintiff because of the earlier default judgment holding that the plaintiff's injuries were "directly and proximately caused by Hemphill's negligence." Id. at 737. We disagreed, holding that

> *It is . . . obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract,*

---

[4] The Leinart Court, citing Kelly, recognized generally that "sufficient privity exists" between insurer and insured for the estoppel by judgment doctrine to apply under the proper circumstances. 698 S.W.2d at 336 n.1.

*and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy.* To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance.

Id. at 738 (emphasis added) (quoting Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793, 799-800 (4th Cir. 1949)); see Nationwide Mut. Fire Ins. Co. v. Stanley, 403 F. Supp. 2d 638, 643 (E.D. Tenn. 2005). We further observed in Kelly that "the duty to pay turns upon coverage and may not be predicated upon a breach of the duty to defend." 574 S.W.2d at 739 (citing Ala. Farm Bureau Mut. Cas. Ins. Co. v. Moore, 349 So. 2d 1113, 1116 (Ala. 1977)). The Kelly Court recognized "the general rule that in the absence of fraud or collusion an insurer, *who has the duty to defend*, has timely notice and defends or elects not to defend, is bound by the judgment in such a case as to issues which were or might have been litigated therein," but held the general rule inapplicable under the facts presented. 574 S.W.2d at 737 (emphasis added). The general rule binding an insurer by the terms of an earlier judgment presumes that the insurer "has the duty to defend." Id.

Applying the reasoning of Kelly to the allegations stated in the complaints and accepting the allegations to be true, as we must because of the default judgments, we conclude that judgment by estoppel does not apply because the altercation at Sputniks is not covered by either the commercial policy provisions or the liquor liability provisions of the policy. As to the commercial policy provisions, any possible basis for liability arose from the assault and battery committed by Mr. Smotherman, or any act in connection with the prevention or suppression of assault and battery, or the harmful and offensive contact between Mr. Smotherman, Mr. Clark, and Mr. Gamble—all of which are specifically excluded by the policy. The clear terms of the policy did not impose upon Insurer the duty to defend the defendants in the action arising from the altercation.

Under these circumstances, the doctrine of estoppel by judgment should not be used offensively to create a duty to defend or indemnify where none existed under the parties' agreement in the insurance policy. See Bill Brown Constr. Co. v. Glens Falls Ins. Co., 818 S.W.2d 1, 4 (Tenn. 1991) ("'[I]t has been repeatedly held that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability . . . '."[5] (quoting 16B J. Appleman & J. Appleman, Insurance Law and Practice §

_____

[5] We recognized in Bill Brown Construction Co. that *promissory estoppel* may be invoked against an insurer, holding that the "insurer may be estopped to deny coverage for any loss by the misrepresentations (continued...)

9090 at 579 (1981))); Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co., 136 F. Supp. 2d 901, 905 (W.D. Tenn. 2001) ("[P]rinciples of waiver and estoppel cannot operate 'to broaden the coverage of an existing contract to include risks not originally contracted for.'" (quoting African Trading Int'l v. Fireman's Fund Ins. Co., 583 S.W.2d 607, 609-10 (Tenn. Ct. App. 1979)); see generally W.C. Crais, III, Comment Note: Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by its Terms or Expressly Excluded Therefrom, 1 A.L.R.3d 1139 (1965) and cases cited therein.

The rationale for this principle, based on the equitable maxim that "estoppel is available to protect a right, but never to create one," is "that an insurer should not be held liable, by estoppel, for a risk for which it received no consideration." Bill Brown Construction Co., 818 S.W.2d at 12. That rationale is applicable here. Insurer and Sputniks executed a contract for liability insurance coverage that expressly excluded the risk of actions for injury resulting from assault and battery, or from the insured's failure to "prevent, bar, or halt any such" assault and battery. Thus, based on the clear and unambiguous terms of the insurance contract, Insurer received no consideration for these risks, and the parties agreed that Insurer would have no duty to defend or indemnify losses arising from these risks.

As to the liquor liability provision, Insurer is not estopped to argue lack of coverage because this issue was neither raised by the pleadings nor decided by the default judgment of the trial court. Insurer had two general duties under the policy—to defend and to indemnify. An insurer's duty to defend is determined solely by an examination of the allegations of the underlying complaint. Travelers Indem. Co. v. Moore & Assoc., 216 S.W.3d 302, 305 (Tenn. 2007); St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994); First Nat'l Bank in Bristol v. S.C. Ins. Co., 341 S.W.2d 569, 570 (Tenn. 1960). An insurer's "duty to indemnify is based upon the facts found by the trier of fact." Travelers Indem. Co., 216 S.W.3d at 305.

We therefore look to both the allegations in the complaint and the trial court's judgment as we review Insurer's obligation under the policy. The liquor liability policy provision provides coverage for liability "by reason of the selling, serving or furnishing of any alcoholic beverage." There are no allegations in plaintiffs' complaints that the defendants sold, served or furnished any alcoholic beverages that caused or contributed to

<hr />

[5](...continued)
of its agent upon which the insured reasonably relies." 818 S.W.2d at 12. Similarly, in Allstate Insurance Co. v. Tarrant, ___ S.W.3d___, No. E2009-02431-SC-R11-CV, 2012 WL 989637, at *10 (Tenn. Mar. 26, 2012), we reaffirmed and applied the general rule that "[a]n insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent." Importantly, in this case there is no allegation of misrepresentation, negligence, or mistake of Insured's agent, but only an argument for the application of estoppel by judgment.

the bar fight. Instead, plaintiffs alleged that the defendants "engaged in a pattern of conduct which encourages inebriation of its patrons," and that their "failure . . . to provide security exacerbates the potential for dangerous conditions resulting from instances of inebriation of its patrons." Plaintiffs argue that these allegations should be interpreted as asserting a claim that the defendants negligently sold, served, or furnished alcoholic beverages to Mr. Smotherman before he killed Mr. Clark and injured Mr. Gamble. We do not agree. Nothing in the plaintiffs' complaints can be reasonably interpreted as alleging or suggesting that the defendants provided Mr. Smotherman alcohol on the day of the assault and battery. The plaintiffs' very generally worded allegations, which stated a cause of action for premises liability, cannot be extrapolated to include a specific allegation regarding the service of alcohol to Mr. Smotherman.[6]

Plaintiffs cannot extend the default judgment to matters outside the issues raised in the pleadings. Rule 54.03 of the Tennessee Rules of Civil Procedure specifically addresses default judgments and provides as follows:

> A *judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.* Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings; but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief.

(Emphasis added); see Holder v. Drake, 908 S.W.2d 393, 395 (Tenn. 1995) ("[I]t would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award." (quoting Qualls v. Qualls, 589 S.W.2d 906, 909-10 (Tenn. 1979))); Qualls, 589 S.W.2d at 910 (holding that "unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings" and that "a default judgment may not extend to matters outside the issues raised by the pleadings or

---

[6]Additionally, plaintiffs made no allegations stating a cause of action under the Tennessee Dram Shop Act, Tennessee Code Annotated section 57-10-101 et seq. (2002 & Supp. 2011). Liability for the sale of alcoholic beverages can only arise pursuant to the Dram Shop Act. Cf. Biscan v. Brown, 160 S.W.3d 462, 472-73 (Tenn. 2005); Collins v. Arnold, No. M2004-02513-COA-R3-CV, 2007 WL 4146025, at *6 (Tenn. Ct. App. Nov. 20. 2007).

beyond the scope of the relief demanded." (quoting Wright & Miller, Federal Practice and Procedure § 2663, at 99-100 (1973))); see also Brown v. Brown, 281 S.W.2d 492, 497 (Tenn. 1955) ("[A] judgment or a decree which is beyond the fair scope of the pleadings is void."); Fidelity-Phenix Fire Ins. Co. v. Jackson, 181 S.W.2d 625, 629 (Tenn. 1944) ("No rule is better settled than that both allegations and proof are essential to a decree or judgment and that there can be no valid decree unless the matter on which the decree is rested is plainly within the scope of the pleadings.").[7]

The complaints did not fairly raise the issue of whether the defendants negligently served alcohol to Mr. Smotherman. We have recently observed that "the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011); see also Elec. Controls, 19 S.W.3d at 227 ("The policy underlying this rule is that, 'since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced.'" (quoting Brown v. Brown, 281 S.W.2d at 497)). The complaints provided no notice to Insurer of any potential issue of service of alcohol to Mr. Smotherman.

Likewise, the trial court's default judgments, which provided only that "default judgment on the issue of liability is granted to the plaintiff in this cause," cannot be held to estop Insurer from arguing that the liquor liability coverage provision of the policy is inapplicable. Because the complaints contained no allegation that the defendants sold, served, or furnished alcohol to Mr. Smotherman, the default judgment did not impose liability on the defendants for furnishing or providing alcoholic beverages. The policy provides coverage and a duty of Insurer to indemnify only "those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies *if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage*." (Emphasis added). There was no duty on Insurer to defend or indemnify based on the allegations in the complaint and the findings of the trial court.

---

[7] An exception to this general rule is provided by Tennessee Rule of Civil Procedure 15.02, which states that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." See Biscan v. Brown, 160 S.W.3d at 471; Elec. Controls v. Ponderosa Fibres of Am., 19 S.W.3d 222, 227 n.3 (Tenn. Ct. App. 1999). But the Rule 15.02 exception for issues tried by consent of the parties is not applicable here.

**IV.**

Having determined that Insurer is not collaterally estopped by the doctrine of estoppel by judgment, we now address the issue of whether the concurrent cause doctrine applies to provide coverage for the altercation that formed the basis for the underlying tort action. The question of the extent of insurance coverage is a question of law involving the interpretation of contractual language, which we review de novo with no presumption of correctness. U.S. Bank, 277 S.W.3d at 386; Travelers Indem. Co., 216 S.W.3d at 305. Insurance contracts are "subject to the same rules of construction as contracts generally," and in the absence of fraud or mistake, the contractual terms "should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." U.S. Bank, 277 S.W.3d at 386-87. Additionally, courts should construe insurance policies "'as a whole in a reasonable and logical manner.'" Travelers Indem. Co., 216 S.W.3d at 306 (quoting Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)).

The pivotal language of the insurance policy in this case provides that "[t]his insurance does not apply to actions and proceedings to recover damages for [injury] arising from . . . Assault and Battery or any act or omission in connection with the prevention or suppression of such acts." The policy further provides that Insurer "is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages." The plaintiffs admit that there is no coverage arising from Mr. Smotherman's assault and battery that resulted in Mr. Clark's death and Mr. Gamble's injury. They assert, however, that the concurrent cause doctrine applies and results in coverage arising from the defendants' negligence in engaging in a pattern of conduct encouraging inebriation of its patrons and failing to take reasonable steps to protect customers from foreseeable criminal attacks. We respectfully disagree.

Tennessee recognizes the concurrent cause doctrine, which provides that there is insurance coverage in a situation "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 887 (Tenn. 1991). The fatal flaw in the plaintiffs' concurrent cause doctrine argument is that there is no nonexcluded concurrent cause. Accepting all of the complaints' allegations regarding the defendants' negligence as the established facts, the risks of their negligent conduct in failing to prevent an assault and battery are expressly excluded from coverage under the policy. The policy excludes coverage for injuries resulting from "Assault and Battery *or any act or omission in connection with the prevention or suppression of such acts*." (Emphasis added). The complaints cannot be reasonably construed as alleging anything other than

-11-

negligent acts or omissions in connection with the prevention or suppression of Mr. Smotherman's assault and battery. If the above-quoted policy provisions were not clear enough, the policy further provides that "[t]his exclusion [for assault and battery] applies *regardless of the degree of culpability or intent* and without regard to: . . . [t]*he alleged failure* of the insured or his officers, employees, agents or servants to attempt *to prevent, bar or halt any such conduct*." (Emphasis added). Such conduct is exactly what was alleged in the complaints, which asserted that the defendants failed "to provide security" and "breached the duty upon business owners to take reasonable measures to protect customers from foreseeable criminal attacks." Therefore, although the facts establish an ostensible concurrent cause—the defendants' negligence in failing to provide security and take reasonable steps to prevent an assault and battery—they do not establish a *nonexcluded* concurrent cause.[8]

The case of Planet Rock, Inc. v. Regis Insurance Co., 6 S.W.3d 484 (Tenn. Ct. App. 1999), relied upon by the plaintiffs, is distinguishable because it involved a nonexcluded concurrent cause—the negligence of an insured nightclub's employees in moving an injured patron from the parking lot to inside the Planet Rock nightclub, undertaking to provide medical treatment, and failing to make timely professional medical assistance available, resulting in the patron's death. Id. at 486. Although the Planet Rock patron's injuries were initially caused by an assault and battery, an excluded cause, Planet Rock's subsequent negligence was held to be a covered concurrent cause. Id. at 491, 493 (citing and following Watts). While we have no quarrel with the analysis in the Planet Rock decision, it is distinguishable because in the present case there is no allegation of subsequent nonexcluded negligence by the defendants in negligently undertaking to provide medical treatment or in any other regard.[9]

---

[8] The plaintiffs rely upon the case of QBE Insurance Corp. v. M & S Landis Corp., 915 A.2d 1222, 2007 PA Super 12 (Pa. Super. Ct. 2007) in support of their argument to the contrary. The Landis decision, which held there was liability insurance coverage resulting from the intentional and negligent acts of an insured nightclub's employees that resulted in a patron's death, is unpersuasive in our view. Landis involved actions by the bar's employees, whereas there is no direct action by Sputniks' employees alleged in the present action. Moreover, Landis has been subsequently criticized by at least one court that declined to follow it. See Markel Int'l Ins. Co. v. 2421 Salam, Inc., 2009 WL 1220557, at *7 n.13 (E.D. Penn. Mar. 31, 2009) (stating that "[w]e are unable to reconcile the QBE [v. Landis] court's conclusion with the plain language of the exclusion and the complaint allegations at issue before it . . .").

[9] The Court of Appeals reached a similar conclusion in a case involving an assault and battery exclusionary clause in a liability insurance policy in St. Paul Reinsurance Co. v. Williams, No. W2003-00473-COA-R3-CV, 2004 WL 1908808 (Tenn. Ct. App. Aug. 25, 2004). In Williams, the court rejected the insured nightclub's argument that the concurrent cause doctrine provided coverage for an incident where one patron shot another, distinguishing Planet Rock on the grounds that no nonexcluded concurrent cause had

(continued...)

-12-

**V.**

Because there is no liability insurance coverage under the terms of the policy issued by Insurer, the judgment of the trial court is reversed, the judgment of the Court of Appeals is affirmed in part and reversed in part, and this case is remanded to the trial court with directions to quash the writ of non-wage garnishment and dismiss the action. Costs on appeal are assessed one-half each to appellee Donna Clark and appellee Leonard Gamble, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

---

[9](...continued)
been established under the facts in Williams. Id., 2004 WL 1908808, at *4.