FILED
04/30/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2024 Session

## SONYA HARNESS v. JOHN MANSFIELD ET AL.

**Appeal from the Circuit Court for Morgan County**
**No. 2022-CV-14     Michael S. Pemberton, Judge**

_____

**No. E2023-00726-COA-R3-CV**

_____

A home health nurse was injured in an automobile accident while driving her vehicle in connection with her employment.  She later sought uninsured motorist benefits under a business automobile liability policy issued to her employer.  Arguing that the uninsured motorist coverage in the business policy did not apply to the employee's accident, the insurance carrier moved for summary judgment.  The trial court granted the carrier's motion.  We conclude that the business policy unambiguously limited uninsured motorist coverage to specifically listed automobiles.  Because the nurse's vehicle was not listed, the uninsured motorist coverage in the business policy did not apply.  We further conclude that this policy limitation does not contravene our uninsured motorist statutes.  So we affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Vic Pryor, Jacksboro, Tennessee, for the appellant, Sonya Harness.

E. Jason Ferrell and Hannah J. Leifel, Nashville, Tennessee, for the appellee, The Cincinnati Insurance Company.

**OPINION**

**I.**

Sonya Harness was employed as a home health nurse with Volunteer Staffing, Inc. On July 10, 2021, Ms. Harness was injured in a two-car collision.  At the time of the

accident, she was driving her own vehicle, a Chevrolet Trax, within the course and scope of her employment. Ms. Harness had insurance coverage for her vehicle under a personal automobile liability insurance policy issued by Tennessee Farmer's Mutual Insurance Company. Her policy included uninsured motorist coverage. Volunteer Staffing maintained a business automobile liability policy issued by The Cincinnati Insurance Company that also provided liability coverage for Ms. Harness under these circumstances.

After the accident, Ms. Harness filed a personal injury action against the other driver and notified both insurance carriers of a potential uninsured motorist claim. *See* Tenn. Code Ann. § 56-7-1206 (2016). Both carriers disputed coverage.

The Cincinnati Insurance Company moved for summary judgment on whether the business policy provided uninsured motorist coverage for Ms. Harness's injuries. By its plain terms, the policy limited uninsured motorist coverage to injuries that occurred while the insured was occupying an automobile specifically listed in the declarations. Because Ms. Harness's Chevrolet Trax was not listed, the insurer argued that the uninsured motorist coverage in the Cincinnati policy did not apply. Alternatively, it argued that, under the anti-stacking statute, only the uninsured motorist coverage provided by Ms. Harness's personal automobile liability policy was applicable because she was injured while driving her own vehicle. *See id.* § 56-7-1201(b)(2) (2016).

Ms. Harness countered that Tennessee's uninsured motorist statutes required the insurance carrier to provide her with uninsured motorist coverage under these circumstances. *See id.* § 56-7-1201(a). In her view, the policy provisions limiting uninsured motorist coverage were invalid because Volunteer Staffing never signed a written rejection of such coverage. *See id.* § 56-7-1201(a)(2). She also claimed that the insurer's reliance on the anti-stacking statute was misplaced. *See id.* § 56-7-1201(b)(2). Properly viewed, the statute had no bearing on the coverage issue.

The trial court ruled that the Cincinnati policy did not provide uninsured motorist coverage for Ms. Harness's injuries. Because she was operating her own vehicle at the time of the accident, only the uninsured motorist coverage in her personal automobile liability policy could apply. *See id.* § 56-7-1201(b)(2). And the coverage limitation in the Cincinnati policy did not contravene Tennessee's uninsured motorist statutes. Thus, the court granted summary judgment to the insurer and designated the judgment as final. *See* TENN. R. CIV. P. 54.02.

## II.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56.04. The party moving for summary judgment has "the burden

of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

We review the summary judgment decision as a question of law. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). So our review is de novo; the trial court's decision enjoys no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

A.

Generally, the extent of insurance coverage is governed by the terms of the policy. *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). But because uninsured motorist coverage is statutorily regulated in Tennessee, our uninsured motorist statutes become part of the insurance contract. *Christenberry v. Tipton*, 160 S.W.3d 487, 492 (Tenn. 2005). If there is a conflict between the policy and the applicable statutes, the statute prevails. *Id.*; *Fleming v. Yi*, 982 S.W.2d 868, 870 (Tenn. Ct. App. 1998). Both contract interpretation and statutory construction are legal issues, which we review de novo with no presumption of correctness. *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023); *Clark*, 368 S.W.3d at 441.

By statute, every general automobile liability policy issued or renewed in Tennessee must include uninsured motorist coverage. Tenn. Code Ann. § 56-7-1201(a). The amount of the required coverage must equal the liability limits for bodily injury. *Id.* § 56-7-1201(a)(1). Even so, the "named insured may reject . . . coverage completely or select lower limits . . . not less than the minimum coverage limits in [the Financial Responsibility Law]" in a signed writing. *Id.* § 56-7-1201(a)(2).

For purposes of summary judgment, it is undisputed that Ms. Harness was an additional "insured" under the liability provisions of the Cincinnati policy. The named insured was Volunteer Staffing. But, for liability coverage, the term "insured" included Volunteer Staffing's employees while they were driving their own vehicles in connection with the employer's business.

As required by our statute, the Cincinnati policy includes uninsured motorist coverage with limits equal to the liability limits for bodily injury. *See id.* § 56-7-1201(a), (a)(1). The uninsured motorist endorsement states that the insurer "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or operator of an 'uninsured motor vehicle.'" As relevant here, "insured" is defined in the endorsement to include "any natural person," such as Ms. Harness, "but only for injuries that occur while 'occupying' an 'auto' for which coverage is provided in the Coverage Form."

3

The Coverage Form specifies that each type of coverage in the policy only applies to the automobiles shown as covered, as indicated by the numerical symbols entered by the coverage type. The symbol "7" appears in the "covered autos" column next to uninsured motorist coverage.[1] This symbol refers to "SPECIFICALLY DESCRIBED 'AUTOS,'" which is further defined as "[o]nly those autos described in ITEM THREE of the Declarations for which a premium charge is shown." It is undisputed that the only vehicle that matches this definition is a 2004 Honda Odyssey. Thus, by its plain terms, the policy expressly limits uninsured motorist coverage to injuries that occur while occupying this one vehicle. And Ms. Harness suffered her injuries while driving her vehicle, the Chevrolet Trax.

B.

Ms. Harness contends that "the crux of this case" is whether policy provisions limiting uninsured motorist coverage to specifically listed vehicles "can substitute for the mandatory rejection in writing requirement" in our uninsured motorist statute. *See id.* § 56-7-1201(a)(2). As she sees it, "the only way to eliminate uninsured motorist coverage [for her vehicle] was a written rejection as a part of the policy." *Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992). And there is no evidence of a written rejection here.

Ms. Harness cites two previous decisions of this Court to support her argument. *See id.* at 81-82; *Fleming*, 982 S.W.2d at 870. But neither case is dispositive. In *Dunn v. Hackett*, the employer's policy "did not expressly include uninsured motorist coverage for vehicles based in Tennessee." 833 S.W.2d at 80. Because the employer never "effectively rejected uninsured motorist coverage, as required by statute," we held that the policy included uninsured motorist coverage. *Id.* at 81-82. In *Fleming v. Yi*, a provision in the employer's policy purported to lower the policy's stated limits of uninsured motorist coverage in certain situations. 982 S.W.2d at 869. Yet the named insured never selected lower limits in writing. *Id.* at 870. So we held that the policy provision was invalid. *Id.* This appeal presents a different scenario.

According to Ms. Harness, the Cincinnati policy impermissibly restricts the scope of uninsured motorist coverage. She maintains that the policy must extend uninsured motorist coverage to "all vehicles that have liability coverage in the policy" to satisfy the statutory mandate. Contrary to Ms. Harness's claims, our supreme court has not directly addressed this issue. In *Christenberry v. Tipton*, the plaintiff argued that our uninsured motorist statute "requires that all persons 'covered' for liability purposes must also be provided uninsured motorist coverage." 160 S.W.3d at 493. However, our supreme court

---

[1] More symbols appear in the "covered autos" column next to liability coverage. Thus, the Coverage Form shows that liability coverage applies to "specifically described autos," "hired autos," and "nonowned autos," as those terms are further defined in the policy.

determined that the plaintiff "was not an 'insured,' as the policy define[d] that term under either the uninsured motorist or liability provisions." *Id.* at 494. So it never reached the plaintiff's argument.

Our objective in statutory interpretation is to ascertain the statute's meaning. *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2024). In determining meaning, we give the words of the statute their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). "When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we 'enforce the statute as written.'" *Deberry*, 651 S.W.3d at 925 (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)).

The statute requires all automobile liability insurance policies delivered or renewed in Tennessee to

> include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

Tenn. Code Ann. § 56-7-1201(a). And it mandates the coverage amount. *Id.* § 56-7-1201(a)(1). Otherwise, the statute does not explicitly address the scope of the required coverage or dictate the form of coverage. *See id.* § 56-7-1205 (2016) (allowing policies to "include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits").

According to our supreme court, the statute is meant to provide limited, rather than broad, coverage. *Terry v. Aetna Cas. & Sur. Co.*, 510 S.W.2d 509, 513 (Tenn. 1974). Its purpose "is to provide, within fixed limits, some recompense to innocent persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." *Shoffner v. State Farm Mut. Auto. Ins. Co.*, 494 S.W.2d 756, 758 (Tenn. 1972), *overruled in part by State Auto. Mut. Ins. Co. v. Cummings*, 519 S.W.2d 773 (Tenn. 1975). It serves to "protect those who purchase motor vehicle liability insurance from those who do not." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012).

Ms. Harness emphasizes that this statutory requirement is "for the protection of persons insured under the policy" who are injured by an uninsured motorist. And she is an "insured" under the liability provisions of the Cincinnati policy. But this language does not guarantee uninsured motorist coverage for Ms. Harness in this instance. Ms. Harness

is not the named insured. So her rights under the policy necessarily depend on "the choices and selections of coverage made by the named insured." *Burns v. Aetna Cas. & Sur. Co.*, 741 S.W.2d 318, 323 (Tenn. 1987). Here, Volunteer Staffing chose to include the mandated amount of uninsured motorist coverage in the Cincinnati policy. And it apparently decided to limit that coverage to specifically listed vehicles. These choices do not contravene the plain language of our uninsured motorist statute.

C.

The Cincinnati policy unambiguously limits uninsured motorist coverage to injuries that occur while the insured is occupying a specifically listed vehicle. Coverage limitations "that are designed to avoid duplication of insurance and other benefits" are valid and enforceable in Tennessee. Tenn. Code Ann. § 56-7-1205; *Hill v. Nationwide Mut. Ins. Co.*, 535 S.W.2d 327, 331-32 (Tenn. 1976). Thus, our courts have enforced policy provisions limiting uninsured motorist coverage to specifically listed vehicles, much like the policy limitation here. *See Hill*, 535 S.W.2d at 332; *Fletcher v. White*, No. E2009-01199-COA-R3-CV, 2010 WL 3715624, at *4-5 (Tenn. Ct. App. Sept. 22, 2010); *Holloway v. Purdy*, No. W2007-02795-COA-R3-CV, 2009 WL 1362319, at *3, 6 (Tenn. Ct. App. May 15, 2009); *Smith v. Hobbs*, 848 S.W.2d 662, 663 (Tenn. Ct. App. 1992); *Graves v. Tenn. Farmers Mut. Ins. Co.*, 671 S.W.2d 841, 843 (Tenn. Ct. App. 1984).

For example, in *Hill v. Nationwide Mutual Insurance Co.*, the automobile liability policy included uninsured motorist coverage. 535 S.W.2d at 328. Although the injured party was insured for liability purposes, the uninsured motorist coverage did not apply because the injuries occurred while the insured was driving an unlisted vehicle. *Id.* The plaintiff argued that this exclusion contravened the statutory mandate that all automobile liability policies include uninsured motorist coverage. *See id.* at 328-29. But our supreme court ruled that the exclusion was valid and enforceable. *Id.* at 332. It satisfied the statutory criteria. *Id.*; *see* Tenn. Code Ann. § 56-7-1205. And it did not "so conflict with the underlying purpose of the uninsured motorist statutes, as construed in this state, that it must be deemed illegal and void." *Hill*, 535 S.W.2d at 332.

In *Holloway v. Purdy*, this Court applied the *Hill* analysis to a policy provision in a garage owner's automobile insurance policy that limited uninsured motorist coverage to vehicles specifically listed in the policy. *Holloway*, 2009 WL 1362319, at *3, 6. The garage owner was injured by an uninsured motorist while driving a customer's car, which was not a listed vehicle in the garage owner's policy. *Id.* at *1. The policy "unambiguously limit[ed] its uninsured motorist coverage to the vehicles listed in the policy." *Id.* at *3. We reasoned that the limitation in the policy "like the exclusion in *Hill*, appear[ed] designed to avoid duplication of coverage." *Id.* at *6. So it did not contravene our uninsured motorist statutes. *Id.*

6

Still, Ms. Harness insists that policy limitations must be "equally applicable to the liability provisions of the policy" to be valid. She bases this assertion, not on the language of our statute, but on our supreme court's decision in *Dockins v. Balboa Insurance Co.*, 764 S.W.2d 529 (Tenn. 1989). But we do not read the *Dockins* decision so broadly. The question presented in *Dockins* was whether the plaintiff's vehicle could be considered an "uninsured motor vehicle" within the meaning of the policy and the uninsured motorist statute when the policy excluded uninsured motorist coverage for injuries "caused by a motor vehicle owned by [the named insured] or a family member." *Id.* at 529. The court noted that it had answered a similar question in *Holt v. State Farm Mutual Insurance Co.* 486 S.W.2d 734 (Tenn. 1972). *Id.* at 529-30. In that case, the court held that a policy definition of "uninsured motor vehicle" that excluded vehicles insured under the policy did not contravene a previous version of our uninsured motorist statute. *Id.* at 530; *see Holt*, 486 S.W.2d at 736-37. In other words, the statute did not require an insurance "carrier to provide coverage in situations that it unquestionably could exclude from liability coverage." *Dockins*, 764 S.W.2d at 530. As the *Dockins* court went on to explain, nothing about the recent amendments to the statute indicated that the legislature intended to "transform uninsured motorist requirements into broad coverage, amounting, in effect, to personal injury protection." *Id.* at 532. Thus, an insurance carrier may validly include limitations and exclusions in an automobile policy. *See id.* at 533. And this "includes exclusions the carrier could put in a liability policy." *Ragsdale v. Deering*, No. M2004-00672-COA-R9-CV, 2006 WL 2516391, at *3 (Tenn. Ct. App. Aug. 30, 2006).

Here, Ms. Harness's personal automobile liability policy also includes uninsured motorist coverage. So the limitation in the Cincinnati policy appears to be designed to avoid duplicate coverage. As such, it is a permissible limitation under our statute. *See Hill*, 535 S.W.2d at 332; *Holloway*, 2009 WL 1362319, at *6. Given this conclusion, we do not address the alternative basis for the trial court's decision.

## III.

Based on the undisputed facts, the Cincinnati policy does not provide uninsured motorist coverage for Ms. Harness's injuries. So we affirm the grant of summary judgment.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

7