# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 17, 2014 Session

# TENNISON BROTHERS, INC. V. WILLIAM H. THOMAS, JR.

**Appeal from the Chancery Court for Shelby County**
**No. CH081310     Kenny W. Armstrong, Chancellor**

---

**No. W2013-01835-COA-R3-CV - Filed August 6, 2014**

---

After a default judgment was entered against Appellee and in favor of Appellants on claims of intentional interference with business relationships, common law and statutory inducement to breach a contract and intentional interference with a contract, and breach of contract, a writ of inquiry hearing was held to determine the appropriate amount of damages to which the Appellants were entitled. Therein, the trial court went outside the pleadings to consider the issue of liability. We conclude that the trial court erred in considering the issue of liability because the well-pled facts contained in the Appellants' respective complaints were dispositive on that question upon the grant of default judgment. Our review of the complaints leads us to conclude that the Appellants have set forth sufficient facts to prove the *prima facie* elements of their causes of action. Accordingly, Appellants are entitled to damages, and the trial court erred in denying them. Therefore, we reverse the trial court's order, and remand for a determination of damages. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P. J., M. S., and DONALD E. PARISH, SP. J., joined.

Kathy Baker Tennison and Stuart B. Breakstone, Memphis, Tennessee, for the appellant, Tennison Brothers, Inc.

Gary E. Veazey, Memphis, Tennessee, for the appellee, William Thomas, Jr.

Robert L. J. Spence, Jr., Memphis, Tennessee, for the appellee, Clear Channel Outdoor, Inc.

**OPINION**

This case began in 2004 as a business dispute over competing rights to a state-issued permit to construct a billboard on two adjacent properties, both of which front Interstate 40 and Interstate 240 in Shelby County. Tennison Brothers, Inc. ("Tennison") owns one of those properties. On August 19, 2004, Tennison entered into a lease agreement with Clear Channel Outdoor ("CCO," and together with Tennison, "Appellants"). The lease, which commenced on September 1, 2004 and ran for twenty years, granted CCO the right to construct an advertising billboard on Tennison's property. The right to build was predicated upon CCO's ability to obtain the proper permits for the billboard.

Southern Millwork and Lumber Company ("Southern Millwork") owns the property adjacent to the Tennison property. William H. Thomas ("Appellee") had a billboard lease agreement with Southern Millwork. In late August 2004, Mr. Thomas and CCO each submitted applications for billboard construction permits, known as "Outdoor Advertising Device Permits," to the Beautification Office of the Tennessee Department of Transportation ("TDOT").[1] TDOT Rule 1680-2-3-.03(1)(a)4(i)(I) provides that, "no two structures shall be spaced less than 1,000 feet apart on the same side of the highway." Accordingly, because Mr. Thomas and CCO's requested sites were only 50 feet apart, they could not both receive the TDOT permits. Subpart 5(i) of the foregoing TDOT rule further provides:

> Permit applications will be considered on a first come first serve basis. The applicant must either show proof of ownership of the property or submit a valid land lease or an affidavit signed by the property owner stating that permission has been given to erect this particular outdoor advertising device. The property owner's signature must be notarized . . . . Incomplete applications with accompanying fees will be returned without action.[2]

---

[1] The Beautification Office, specifically the Outdoor Advertising Control Program, is responsible for regulating billboard construction and maintenance along Interstates, National Highways, and Federal-aid Primary Highway System Routes in Tennessee, to ensure compliance with state and federal law, and to "Keep Tennessee Beautiful." The relevant regulations are provided in Tenn. Comp. R & Regs. 1680-2-3-.03, "Criteria for the Erection and Control of Outdoor Advertising."

[2] This is the 2004 version, in force at the time of Mr. Thomas's and CCO's applications. The
(Continued.......)

Mr. Thomas's application was rejected because the signatures on the lease agreement were not notarized. The same day that TDOT rejected Mr. Thomas's application, TDOT received CCO's application for the Tennison site. CCO's application was accompanied by all of the necessary paperwork, including the notarized lease agreement between CCO and Tennison. The application was immediately approved pending the results of a "site inspection," during which a TDOT employee visits the proposed location and measures the distances between other billboards to ensure compliance with the spacing regulations. The site was approved, and TDOT awarded CCO permit numbers 79-2921 and 79-2922 on September 8, 2004. In the meantime, Mr. Thomas obtained the proper documentation and resubmitted his application on August 31, 2004; however, Mr. Thomas's second application was also rejected—this time on the ground that his proposed site violated the spacing requirement as a result of CCO's recently approved application.

Mr. Thomas proceeded to appeal that decision through the administrative hearing process, and ultimately to this Court. *See **Thomas v. Tennessee Dept. of Transportation***, No. M2010-01925-COA-R3-CV, 2011 WL 3433015 (Tenn. Ct. App. Aug. 5, 2011) ("***Thomas***"). By the time this Court heard the appeal, Mr. Thomas had sold his lease agreement, sometime in late 2005, to CBS Outdoor, Inc. ("CBS"). Accordingly, Mr. Thomas no longer had any leasehold on the disputed property. Upon the filing of a motion to dismiss for lack of standing, the trial court concluded that Mr. Thomas "lacks standing to maintain this lawsuit and this cause is moot as a matter of law." In ***Thomas***, we affirmed that decision.

By virtue of the state law regulating the spacing of advertising structures, only one of the billboard owners involved in this case can receive the state-issued permit. That permit, as discussed above, was issued to CCO. However, there is also a county-issued permit that addresses the spacing of advertising structures; because of the spacing of the proposed billboards, as is the case with the state-issued permit, only one of the billboard owners involved in this case can receive the county-issued permit. The process involved in procuring the state and county permits is separate and distinct; neither relies upon, nor affects the other. However, both permits are required in order to legally construct a billboard. Although CCO was adjudicated the correct recipient of the state-issued permit, the county-issued permit had been issued for the Southern Millwork property before the dispute over the

---

(.......continued)
current version of the "first come first serve" rule, which has been modified in ways not relevant to this case, can be found at Tenn. Comp. R & Regs. 1680-2-3-.03(1)(a)7(v). Additionally, the requirements for proof of ownership or a notarized lease or affidavit from the property owner can be found at -(a)6(iv)(III). The rule that an application will not be considered unless it is completed and accompanied by all the necessary documentation can be found at - (a)7(I).

state-issued permit arose. The county-issued permit is currently held by CBS for its structure located on the Southern Millwork property. Accordingly, CCO is precluded from building on its site, despite the fact that it holds the state-issued permit.

On July 16, 2008, Tennison filed a complaint against Mr. Thomas, Southern Millwork, and CCO, alleging intentional interference with business relationships, common law and statutory inducement to breach a contract and intentional interference with a contract, and breach of contract.[3] The case was assigned to, and originally heard by, Chancellor Arnold Goldin. Tennison filed a petition for a temporary restraining order and injunction on August 22, 2008. An amended complaint was filed on August 27, 2008.[4] On August 29, 2008, Mr. Thomas filed a motion to dismiss, or in the alternative, a motion to transfer the case to the Circuit Court, in which motion he claimed, *inter alia*, that the Chancery Court did not have jurisdiction to consider Tennison's claims for unliquidated damages.

On September 8, 2008, CCO filed an answer to the amended complaint and a cross-complaint against Mr. Thomas, seeking damages against Mr. Thomas for intentional interference with business relationships and statutory inducement to breach a contract. On September 10, 2008, Mr. Thomas filed an amended motion to dismiss or, in the alternative, to transfer the case. On September 16, 2008, the trial court entered an order, extending the temporary restraining order, and setting the pending motions for hearing. On September 26, 2008, Tennison filed a memorandum in opposition to Mr. Thomas's amended motion to dismiss/transfer. CCO filed its response to Mr. Thomas's motion on October 2, 2008. By order of October 6, 2008, the trial court denied Mr. Thomas's motion to dismiss.

On December 5, 2008, Tennison filed a motion for default judgment against Mr. Thomas for failure to answer. On December 18, 2008, Mr. Thomas filed an answer to Tennison's amended complaint and answer to CCO's cross-complaint, denying any liability and raising a number of affirmative defenses. On January 7, 2009, the trial court entered an order, denying Tennison's motion for default judgment, and allowing Mr. Thomas more time to answer.

On May 6, 2009, Mr. Thomas filed a motion to dismiss Tennison's amended complaint, to dissolve the temporary restraining order, and to dismiss CCO's cross-

---

[3] On May 24, 2010, Southern Millwork was dismissed from the lawsuit by order of voluntary non-suit.

[4] The amended complaint added the claim of public nuisance, which was later dismissed. All other claims remained the same.

complaint. On August 31, 2009, Tennison filed a response in opposition to Mr. Thomas's motion. On November 20, 2009, the trial court entered several orders: (1) an order granting Mr. Thomas's motion for bifurcation; (2) an order denying Mr. Thomas's motion to dismiss the amended complaint and to dissolve the temporary restraining order; and (3) an order denying Mr. Thomas's motion to dismiss the CCO cross-complaint. In addition, on November 20, 2009, the court entered an order striking Mr. Thomas's answers, as a discovery sanction pursuant to Tennessee Rule of Civil Procedure 37.02. By this order, the Chancellor also entered default judgment against Mr. Thomas and in favor of both CCO and Tennison. Mr. Thomas contends that this was error given the fact that Tennison and CCO's respective complaints allegedly contained contradicting allegations as to whether CCO had breached its contract with Tennison. Specifically, Tennison alleged that the contract had been breached, whereas CCO allegedly denied this fact. Also on November 20, 2009, the trial court entered an order, joining CBS as a party-defendant. On December 4, 2009, Tennison filed a second amended complaint, adding CBS to the lawsuit.[5]

On April 15, 2010, CCO filed its answer to the second amended complaint. On April 16, 2010, the Chancellor entered an order setting a writ of inquiry to determine the amount of damages against Mr. Thomas based upon the entry of default judgment against him on November 20, 2009. On May 18, 2010, Mr. Thomas filed an motion, seeking recusal or disqualification of Chancellor Goldin. Tennison opposed the motion. The trial court denied the motion for recusal by order entered on June 4, 2010. Also on June 4, 2010, the Chancellor entered an order, granting Tennison's second motion for sanctions against Mr. Thomas. Therein, the Chancellor held that, "[a]s a sanction for refusing to appear for his deposition and refusing to produce documents . . . Defendant Thomas shall not be allowed to present proof related to damages or in defense thereto." Instead, Mr. Thomas was only "allowed to cross-examine witnesses presented by other parties related to damages."

On July 2, 2010, Mr. Thomas filed a motion to dismiss any claims for damages, claiming, *inter alia*, that he could not be charged with damages because he had sold whatever right he had in the billboard. CCO and Tennison each filed a memorandum of law on damages on July 9, 2010. On December 1, 2010, the trial court entered an order setting the writ of inquiry. Mr. Thomas renewed his motion to dismiss on January 25, 2011. On February 4, 2011, Tennison filed a motion to strike Mr. Thomas's motions to dismiss and to preclude Mr. Thomas from litigating substantive issues subsequent to the default judgment. Tennison also filed a motion in opposition to Mr. Thomas's motions to dismiss on February 17, 2011.

The **Thomas** opinion was filed on August 31, 2011. On November 2, 2011, the trial

---

[5] On June 8, 2010, CBS was dismissed from the case by agreed order of dismissal with prejudice.

court entered an order re-setting the writ of inquiry. On December 6, 2011, the court entered an order, denying Mr. Thomas's motions to dismiss. On January 10, 2012, Mr. Thomas filed a motion to set aside the default judgment, which motion was denied by order of July 6, 2012.

Perceiving that he was not being treated fairly, Mr. Thomas made several motions throughout these proceedings (some of which are mentioned above) seeking Chancellor Goldin's recusal or transfer of the case to a different court. Prior to the hearing on the writ of inquiry, the matter was transferred to Part III of the Shelby County Chancery Court, where the writ of inquiry was heard by Chancellor Kenny W. Armstrong on January 7, 2013. On July 10, 2013, Chancellor Armstrong entered a memorandum opinion, which provides, in relevant part:

> Although [based on the grant of default judgment] this Court must consider as true the well-pled allegations contained in the Complaint, the Court does not find that all of the allegations in the Complaint are consistent with the proof in the record. Upon review of the record and more specifically the Clear Channel Outdoor Lease Agreement ("Lease Agreement") between Tennison and Clear Channel, the Court does not find that a breach had occurred. Section 3 of the Lease Agreement required Clear Channel, upon the execution of the lease, to pay Tennison $1,000.00 for the period of time prior to completion of construction of the billboard. This section further provided that rental payments commence on the date construction is completed. Because construction on the billboard was never completed, these yearly rental payments were never due, making it impossible for Clear Channel to have breached its Lease Agreement with Tennison. Furthermore, Section 7 of the Lease Agreement gives Clear Channel the sole option to cancel the Lease Agreement if Clear Channel is unable to obtain or maintain the necessary permits for the erection, use and/or maintenance of the billboard or if the billboard's use is prevented or restricted by law. Here, Clear Channel was unable to obtain all the necessary permits to erect the billboard at the Tennison site. The claim for common law and statutory inducement to breach a contract expressly requires a breach to occur. Having found no breach, the Court finds that Tennison's claim on this ground fails. Furthermore, for the same reason, Tennison's claim of breach of contract against Clear Channel

also fails.

Concerning Tennison's claim for intentional interference with business relationships, the memorandum opinion goes on to state that:

> [The intentional interference with business relationships claim] does not require an actual breach, just the intention on the part of the defendant to cause a breach employing improper motives. To establish damages for intentional interference with business relationships, Tennison must show that the predominant intent of Thomas'[s] actions were to cause the breach or termination of Tennison's business relationship with Clear Channel. The proof presented did not demonstrate this to be Thomas'[s] primary motive. The primary motive here on the part of Thomas appears to be in pursuit of his own business interest. Thomas zealously pursued his legal rights and remedies in seeking to uphold the initial administrative law judge's order which voided Clear Channel's permit and ordered approval of his permit application. The pursuit of such rights on his part cannot be deemed improper. As such, the Court finds that Tennison is not entitled to any damages for intentional interference with business relationships. Having denied damages based on the intentional interference with business relationships claim, the Court further finds that Tennison is not entitled to treble or punitive damages.

Concerning CCO's cross-claim against Mr. Thomas, the memorandum opinion states:

> The Court finds, however, that Clear Channel did not sufficiently plead or prove enough facts to support the claims of unjust enrichment, implied indemnification or public nuisance and therefore dismisses those claims. As to the claim of intentional interference with business relationships, the Court reaches the same conclusions as expressed previously.

On August 2, 2013, the trial court entered an order on its memorandum opinion. CCO and Tennison appeal. Tennison raises the following issues, as stated in its brief:

> I. Whether the trial court erred in failing to award damages . . . on a default judgment when it did not accept the properly

pleaded allegations as true but rather considered the issue of liability.

II. Even if the issue of liability was properly considered, whether the trial court erred in failing to award damages when sufficient evidence was submitted to demonstrate that Mr. Thomas used unlawful and improper means to induce Clear Channel to breach or fail to perform the lease agreement . . . .

III. Whether an award of compensatory damages, treble damages, punitive damages, and pre-judgment interest is warranted.

CCO raises the following issues as stated in its brief:

I. The trial court erred at the final hearing when it required Clear Channel to prove the elements of its causes of action against Thomas where Clear Channel was previously awarded a default judgment against Thomas.

II. The trial court's ruling that Clear Channel had not proven its causes of action is contrary to the evidence.

III. The trial court erred in denying Clear Channel an award of damages against Thomas.

In the posture of Appellee, Mr. Thomas raises the additional issue:

Whether Chancellor Goldin erred when he failed to dismiss the case—or transfer it to the Circuit Court for lack of subject matter jurisdiction.

We begin our analysis with Thomas's jurisdiction question.

**Jurisdiction**

Tennessee Code Annotated Section 16-11-102 provides, in relevant part, as follows:

(a) The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit

court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.

Unliquidated damages" are those damages "that have not been previously specified or contractually provided for." Bryan A. Garner, A Dictionary of Modern Legal Usage 902 (2d. ed.1995). As explained in 22 Am. Jur. 2d Damages § 465 (2012):

Whether the amount involved qualifies as "liquidated" is not always clear, but in general, "liquidated" means "made certain or fixed by agreement of the parties or by operation of law." On the other hand, "unliquidated damages" are damages that have not been determined or calculated, or not yet reduced to a certainty in respect to amount.

\* \* \*

A liquidated claim exists if the plaintiff has made a demand for a specific sum that the defendant allegedly unlawfully retained, because such a claim is certain and known to the defendant before the suit is filed. A claim that was for a fixed amount that had become due and payable on a set date is also liquidated, even though the verdict for the plaintiff turns out to be less than the figure demanded, as this fact does not necessarily convert a claim for an otherwise liquidated amount into a claim for an uncertain and therefore unliquidated amount.

*Id.* (footnotes omitted).

As set out above, Tennessee Code Annotated Section 16-11-102 gives chancery courts concurrent jurisdiction with circuit courts for most claims. As is relevant to this case, the statute excepts, from the chancery courts' jurisdiction, claims for unliquidated damages "not resulting from a breach of oral or written contract." Inferentially, then, concurrent jurisdiction between the chancery and circuit courts remains intact for claims for unliquidated damages that do result from a breach of oral or written contract. The question, then, is whether CCO and Tennison's causes of action sound in contract.

In its complaint, Tennison sued CCO for breach of contract, and sued Mr. Thomas for tortious interference with a contract and inducement to breach a contract. Tennison also sought injunctive relief in its amended complaint "[f]or the unpermitted and illegally constructed billboard to be removed at the expense of Defendants." Similarly, in its cross-complaint against Mr. Thomas, CCO sought relief under causes of action for tortious interference with a contract and statutory inducement to breach a contract. In addition, CCO sought injunctive relief to have the allegedly unlawful billboard removed. CCO also sought disgorgement of any ill-gotten profits that Mr. Thomas may have received from the billboard. *See* **Zirkle v. Kingston**, 396 S.W.2d 356 (Tenn. 1965) ("Quasi contract (or unjust enrichment) is one of those remedies properly called equitable and cognizable in chancery under its inherent jurisdiction."). The gravamen of CCO and Tennison's respective causes of action is the alleged breach of Tennison's lease agreement with CCO. Thus, the chancery court would have concurrent jurisdiction with the circuit court to adjudicate these claims.

However, even if we assume, *arguendo*, that not all of the damages sought by CCO and/or Tennison are within the chancery court's jurisdiction, it is well settled that "where the chancery court has obtained jurisdiction over some portion of or feature of a controversy it may grant full relief in the same manner as could a court of law." **PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty Dev. Corp.**, 387 S.W.3d 525, 558 (Tenn. Ct. App. 2012) (quoting **Pruitt v. Talentino**, 464 S.W.2d 294, 296 (Tenn. Ct. App. 1970)); *accord*, **Industrial Dev. Bd. v. Hancock**, 901 S.W.2d 382, 384 (Tenn. Ct. App.1995) ("When a court of chancery takes jurisdiction of a case under its inherent jurisdiction it may decide all issues involved in the matter in order to prevent a multiplicity of actions."). Consequently, to the extent that the damages sought may be unliquidated, having taken jurisdiction over the portion of the damages arising in contract, the chancery court may fully adjudicate the matter.

In his brief, Mr. Thomas relies upon the case of **Varno v. Tindall**, 51 S.W.2d 502 (Tenn. 1932), in which our Supreme Court ruled that the chancery court lacked subject matter jurisdiction over the plaintiffs' claims for interference with an oral contract. *Id*. In **Varno**, the disputed contract for the sale of real property was entered by and between the plaintiffs and a non-party, and the damages sought arose from a wrongful mortgage default. *Id*. The **Varno** case is distinguishable from the instant appeal. Unlike the case at bar, in **Varno**, the plaintiff's claims did not include a breach of contract cause of action. This fact is important because, as noted by the **Varno** Court, pursuant to Tennessee Code Annotated Section 16-11-102, "when the suit is (1) for an injury, (2) to property and (3) for unliquidated damages, not arising out of a contract **between the parties**, it cannot be brought in the chancery court." *Id*. at 503 (emphasis added). Here, the damages sought by Tennison and CCO arise out of a contract between the parties. Accordingly, we conclude that the chancery court had subject matter jurisdiction to adjudicate the case.

## Default Judgment

As discussed in detail above, the trial court entered default judgment against Mr. Thomas under its authority, as specifically set out in Tennessee Rules of Civil Procedure 37.02 and 37.04, to impose various sanctions for repeated and contumacious conduct during discovery. Here, the issue of whether the default judgment was proper is not specifically before this Court. Accordingly, our review is initially limited to whether the trial court erred in its ruling on the writ of inquiry for damages.

It is well settled that "[a] judgment by default is a final order disposing of the case on its merits, like any other judgment." *See, e.g., H.G. Hill Realty Co, L.L.C. v. Re/Max Carriage House, Inc.*, 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013). A judgment by default is generally considered an admission of all the properly pled material allegations of fact in the complaint, except the amount of unliquidated damages. *Id*. In the case of *Clark v. Sputniks, L.L.C.*, 368 S.W.3d 431 (Tenn. 2012), our Supreme Court discussed the effect of a default judgment as follows:

> By allowing default judgments to be entered against them, the defendants impliedly admitted as true all the material factual allegations contained in the complaints, except the amount of the plaintiffs' unliquidated damages. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn.1984); *Adkisson v. Huffman*, 225 Tenn. 362, 469 S.W.2d 368, 375 (1971); *Warren v. Kennedy*, 48 Tenn. (1 Heisk.) 437, 439 (1870). Because the factual allegations of the complaints were conclusively established by the trial court's default judgments, Insurer cannot attack or challenge the facts in a later action. *See Home Ins. Co. v. Leinart*, 698 S.W.2d 335, 336 (Tenn.1985); *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 737–38 (Tenn.1978); *Adkisson*, 469 S.W.2d at 375.

*Clark*, 368 S.W.3d at 435. The *Clark* case arose when several customers were injured and one customer was killed in an altercation in a bar. The injured patrons and the survivor of the decedent patron brought action against the bar's liability insurer for declaratory judgment, seeking to recover damages awards obtained against the insured under the insured's liability and liquor license policies. Default judgments were entered against the bar. In *Clark*, the Supreme Court noted relevant allegations from the complaint, "which are taken as true," including that the Defendant "breached the duty to take reasonable measures to protect customer from foreseeable criminal attacks," and "that as a proximate result of the negligence of defendant . . . the plaintiff's husband was killed." *Id*. at 345–36. The Court

cited Tennessee Rule of Civil Procedure 54.03, which provides that:

> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings; but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief.

Although the *Clark* Court applied the foregoing rule, stating that, "accepting the allegations [in the complaint] to be true, as we must because of the default judgment," the Court concluded that the plaintiffs could not extend default judgment to matters outside the issues raised in the pleadings. *Clark*, 368 S.W.3d at 438–39. The Court specifically stated that "because the complaints contained no allegation that the defendants sold, served or furnished alcohol . . . the default judgment did not impose liability on the defendants for furnishing or providing alcoholic beverages." *Id*. at 440.

Thus, appellate courts may review default judgments for fundamental error, i.e., error "apparent on the face of the record and going to the very foundation of the action." 5 C.J.S. Appeal & Error § 718 (1993). Consequently, on appeal from a default judgment or decree, an appellate court may consider the issue of subject matter jurisdiction, as well as "the sufficiency of the . . . complaint to sustain the decree of judgment." 5 C.J.S. Appeal & Error § 718 (1993); *accord* **Edington v. Michigan Mut. Life Ins. Co.**, 183 S.W. 728, 729 (Tenn.1915) (stating that, on appeal from default judgment, appellate court reviews sufficiency of complaint by same standard by which court considers motion to dismiss). "The purpose of a Rule 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint, not the strength of the complainant's proof." **Webb v. Nashville Area Habitat for Humanity, Inc.**, 346 S.W.3d 422, 426 (Tenn. 2011). "We must liberally construe the pleadings, presuming all factual allegations are true and drawing all reasonable inferences in favor of the complainant." *Id*. at 426. A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." *Id*. at 427 (citation omitted).

Applying the foregoing principles, so long as matters are sufficiently raised in the pleadings and sufficiently pled in the complaint, a default judgment requires that the allegations be taken as true and determinative of liability. While the sufficiency of the

-12-

complaint may be examined, so long as the causes of action have been adequately pled, default judgment is determinative on the question of liability. In reviewing this question, we apply the standard for Tennessee Rule of Civil Procedure 12.02 motions to dismiss, and give all reasonable inferences in favor of sustaining the causes of action.

The question, then, is whether Tennison's complaint demonstrates the elements of each of the causes of action for which it seeks damages: (1) intentional interference with business relationships; (2) intentional interference with contract; (3) statutory and common law inducement to breach a contract; and (4) breach of contract. Concerning CCO, their cross-complaint must demonstrate the elements for: (1) intentional interference with a business relationships; and (2) statutory inducement to breach a contract pursuant to Tennessee Code Annotated Section 47-50-109. Because the trial court's ruling rests, in part, upon its determination that there had been no breach of contract in this case, we first address the question of whether the finding of no breach of contract was correct.

## A. Breach of Contract

In the interest of full adjudication, we briefly discuss the trial court's finding that there had been no breach of the contract between CCO and Tennison so as to support Appellants' claims against Mr. Thomas, *supra*. In its order, the trial court specifically found that no breach of contract had occurred because construction on CCO's billboard (on Tennison's property) was never completed. In addition, the court determined that no breach had occurred on the basis that CCO had the option to cancel the agreement, but did not exercise that option. The contract between Tennison and CCO provides, in relevant part, that payments from CCO to Tennison were not due until the billboard was built. As Tennison notes, the effective date of the lease was September 1, 2004, and the writ of inquiry was not heard until January 7, 2013. Therefore, more than eight years had passed from the time Tennison and CCO entered their contract, and still the precipitating event for payment, i.e., building the billboard, had not occurred–this allegedly due to Mr. Thomas's illegal activity in erecting a competing billboard.

It is well settled that "[w]here no provision is made in the contract for performance, a reasonable time is applied to all contracts." ***Minor v. Minor***, 863 S.W. 2d 51, 55 (Tenn. Ct. App. 1993). Furthermore, we have held that the reasonable time standard also applies in the context of a conditional contract, i.e., a contract, such as the one at issue here, where the obligation to perform is dependent upon the happening of some condition that is expressly stated in the contract. ***Birkholz v. Hardy***, No. W2003-01539-COA-R3-CV, 2004 WL 1801736, at *5 (Tenn. Ct. App. Aug. 11, 2004) (citing ***Stovall v. Dattel***, 619 S.W.2d 125 (Tenn. Ct. App. 1981). Moreover, the reasonable time standard applies "regardless of whether the performance contingency is wholly or partially within the control of the obligor."

*Id*. at *7.

In its second amended complaint, concerning its breach of contract claim, Tennison avers, in relevant part:

> 34. That a breach of the implied reasonable time of performance has occurred and the Plaintiff has suffered harm as a result thereof.
> 35. The Plaintiff has suffered harm as a result of the Defendants actions and will continue to suffer harm so long as the conduct continues.

Tennison argues that, after the final order was entered by the Commissioner of TDOT on July 31, 2007, CCO could have erected its billboard on the Tennison property, and that the construction could have been completed within thirty-to-sixty days, depending on the procurement of local permits. As noted above, however, even after eight years, CCO was unable to build its billboard in satisfaction of the contract due to its inability to obtain the county permit. In this appeal, Tennison does not take issue with the fact that the trial court found no liability on CCO's part for breach of contract; rather, Tennison argues that the trial court's finding that there was no breach of contract, which finding (according to the trial court) precluded damages for Mr. Thomas's alleged interference with the CCO and Tennison contract, was error. We agree. Following entry of the default judgment against Mr. Thomas, we must give Tennison all reasonable inferences and take the averments in the complaint as true. Here, Tennison's complaint states that "a breach of the implied reasonable time of performance has occurred." Taking that allegation as true, we must conclude that a breach of the CCO and Tennison contract occurred based upon the passing of the reasonable time for performance.

The trial court also found that no breach of contract had occurred on the ground that CCO had the option to cancel the contract if it was unable to obtain the necessary permits. While this may be a reasonable interpretation of the contract, the fact remains that CCO did not exercise this option. Rather, CCO alleged that Mr. Thomas interfered with the construction of the billboard and sought damages against him. CCO's decision was reasonable under the circumstances as it, like Mr. Thomas, has every right to "pursu[e] [its] own business interest." Accordingly, the mere fact that CCO did not exercise its right to terminate the contract does not, *ipso facto*, mean that the contract was not breached.

## B. Intentional Interference with Business Relationships

Our Supreme Court has defined the elements of the tort of intentional interference

with business relationships as follows: (1) an existing or prospective business relationship with specific or identifiable third persons; (2) that the alleged interfering party knew of the existing or prospective business relationship; (3) that this party intended to cause a breach or termination of the business relationship or business prospect; (4) that the interfering party used improper motive or means; and (5) the party seeking relief suffered damages. *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Concerning the *prima facie* element of "improper motive or means," the *Trau-Med* Court explained:

> It is clear that a determination of whether a defendant acted "improperly" or possessed an "improper" motive is dependent on the particular facts and circumstances of a given case, and as a result, a precise, all-encompassing definition of the term "improper" is neither possible nor helpful. However, with regard to improper motive, we require that the plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff. *See* **Leigh Furniture & Carpet Co.**, 657 P.2d at 307–08.
>
> Moreover, in the attempt to provide further guidance, we cite the following methods as some examples of improper interference: **those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules**, *see id.* at 308; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, *see* **Duggin**, 360 S.E.2d at 836 (citing **Top Serv. Body Shop, Inc.**, 582 P.2d at 1371 n.11); and those methods that violate an established standard of a trade or profession, or otherwise **involve unethical conduct**, such as sharp dealing, overreaching, or unfair competition, *see id.* at 837.

*Trau-Med*, 71 S.W.3d at 701, fn. 5 (emphasis added).

In *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. May 14, 2007), the improper motive element of intentional interference with business relationships tort was at issue. In *Watson's*, Carpet Den was a competitor of Watson's, and Watson's claimed that Carpet Den was interfering with Watson's acquired business relationships in order to improve its own business. In *Watson's*, we stated that "[w]hen two competitors are competing over the same business,

-15-

separating the interest in improving one's own business and taking business away from the competitor would seem problematic." *Id*. at 183. However, in ***Watson's***, we did not have to consider the motive or predominant purpose because of the existence of improper means:

> **That is because either improper motive or improper means may support liability for tortious interference**. Thus, even if a competitor enjoys a privilege that negates the improper motive requirement, it is not insulated from liability if the other requirement is present, i.e., improper means. The Restatement recognized this distinction in § 768(1), quoted above, by providing no protection to a competitor under subsection (b) who uses "wrongful means." **Rephrased, a competitor may be liable for damages under § 768(1) of the Restatement if it uses "improper means," regardless of the motive**.

*Id*. at 176 (emphases added). Based upon the foregoing in ***Watson's***, we affirmed the award of damages of over $1.6 million against Carpet Den and Rick McCormick for tortious interference with business relationships after concluding that the defendants used improper means, including making defamatory statements, which resulted in a loss of the business relationship. *Id*. at 174, 184, 186. In so ruling, we stated that "the competitor's privilege does not apply to prevent liability based on wrongful means, methods, or conduct." *Id*. at 185.

With the foregoing principles in mind, we turn to examine Tennison's second amended complaint, and CCO's cross-complaint. Concerning the allegation of intentional interference with business relationships, Tennison averred the following, relevant facts:

> 17. That the Plaintiff has a business relationship with Clear Channel in that the Plaintiff entered into a lease agreement effective August 19, 2004 commencing on September 1, 2004 wherein Clear Channel leased certain space from the Plaintiff for an outdoor advertising structure ("billboard"). That the rent was to commence "on the date construction is completed."
> 18. That Defendant[] Thomas . . . had knowledge of the existence of the lease, the terms of the lease, and the business relationship between Clear Channel and the Plaintiff,
> 19. That Defendant[] Thomas . . . improperly intended to interfere with and intended to cause the termination of the Plaintiff's business relationship.
> 20. That Defendant[] Thomas . . . improperly interfered with the

Plaintiff's business relations by illegally and improperly constructing a billboard without a permit that interfered with the construction of the billboard on the Plaintiff's property.

21. That Defendant[] Thomas . . . improperly interfered with the Plaintiff's business relations by failing and refusing to remove the illegally constructed and unpermitted billboard even after the Tennessee Department of Transportation ordered the billboard to be IMMEDIATELY REMOVED on March 5, 2007 and on July 31, 2007. That the Defendants have refused to remove the billboard to date and continue to profit from the illegal and unpermitted billboard.

22. That Defendant[] Thomas . . . maliciously and intentionally interfered with the business relationship between the Plaintiff and Clear Channel and continue to maliciously interfere with the business relationship to date by failing and refusing to remove the illegally constructed and unpermitted billboard.

23. Defendant[] Thomas . . . employed improper means and improper motives to interfere with Plaintiff's business relationship with Clear Channel.

24. The Plaintiff has suffered harm as a result of the actions of Defendant[] Thomas . . . . All of the foregoing acts will substantially harm and impair the business relationship of the Plaintiff as long as the conduct continues.

In its cross-complaint, CCO avers the following, relevant facts concerning interference with business relationships:

30. Cross-Plaintiff had an existing business relationship with Tennison Brothers.

31. Defendant[] Thomas . . . knew that Cross-Plaintiff and Tennison Brothers had an existing business relationship pertaining to the construction of a billboard upon Tennison Brothers' property.

32. Defendant[] Thomas . . .intended to cause the breach or termination of the business relationship Cross-Plaintiff maintains with Tennison Brothers.

33. Defendant[] Thomas . . . had an improper motive for causing a breach or termination of the business relationship between Cross- Plaintiff and Tennison Brothers.

34. The conduct of Defendant[] Thomas . . . of illegally

constructing a billboard on Southern's property was tortuous and designed to cause harm to the business relationship between the Cross-Plaintiff and Tennison Brothers.

35. Cross-Plaintiff was damaged by the tortuous interference by Defendant[] Thomas . . . which has resulted in a long delay in the construction and erection of the billboard on Tennison Brothers' property.

36. Such tortuous interference with a business relationship by Defendant[] Thomas . . . procured a breach or violation Cross-Plaintiffs contract with Tennison Brothers thus entitling Cross-Plaintiff to treble damages.

As set out in its order, *supra*, the trial court stated that "Tennison must show that the predominant intent of Thomas's actions were to cause the breach or termination of Tennison's business relationship with Clear Channel." This is correct. However, the trial court's order goes on to state that "[t]he proof presented did not demonstrate this to be Thomas's primary motive. The primary motive here on the part of Thomas appears to be in pursuit of his own business interest." As discussed above, it is not the proof that drives the inquiry in a review of a default judgment; it is the averments made in the complaint. From its order, *supra*, it appears that the trial court erroneously focused on the fact that Mr. Thomas's pursuit of his own business interests was not improper. Although that finding may be true, we cannot overlook the specific facts pled in the Appellants' respective complaints. Therein, both Tennison and CCO aver that Mr. Thomas illegally constructed a billboard without a permit to prevent the construction of a billboard by CCO on Tennison's property. Under the definitions outlined in **Trau-Med** and **Watson's**, the allegation that Mr. Thomas illegally constructed a billboard is sufficient to satisfy the fourth criterion for this tort, i.e., that the interfering party use improper motive or means. Here, the improper means was Mr. Thomas's construction of a billboard without a permit, which prevented CCO from building its billboard on Tennison's property. Taking the facts averred above as true and giving all reasonable inference in favor of Tennison and CCO, we conclude that both Tennison and CCO have pled facts sufficient to satisfy the *prima facie* requirements for the intentional interference with business relationships tort.

## C. Inducement to Breach a Contract and Intentional Interference with Contract

Tennessee recognizes both a statutory and common law action for inducement to breach a contract or intentional interference with contract, and both forms of the tort protect "contracts implied in fact, as well as formal, expressed contracts." **Givens v. Mullikin**, 75

S.W.3d 383 (Tenn. 2002); Tenn. Code Ann. §47-50-109.[6] Both statutory and common law inducement to breach a contract require the plaintiff to prove seven elements: (1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that the breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff. ***Givens***, 75 S.W.3d at 405.

Turning to the complaints. Concerning this tort, Tennison's second amended complaint avers, in pertinent part, that:

> 26. That the Plaintiff has a contract with Clear Channel in that the Plaintiff entered into a lease agreement effective August 19, 2004 commencing on September 1, 2004 wherein Clear Channel leased certain space from the Plaintiff for an outdoor advertising structure ("billboard"). That the rent was to commence "on the date construction is completed."
> 27. That Defendant[] Thomas . . . have full knowledge of the existence of the lease, the terms of the lease, and the business relationship between Clear Channel and the Plaintiff.
> 28. That Defendant[] Thomas . . . intended to induce a breach of the contract between the Plaintiff and Clear Channel by illegally and improperly constructing a billboard without a permit that interfered with the construction of the billboard on the Plaintiff's property and by failing and refusing to remove said billboard to date.
> 29. Defendant[] Thomas . . . maliciously and intentionally interfered with the business relationship between the Plaintiff and Clear Channel and continue to maliciously and intentionally interfere with the contract to date by failing and refusing to remove the illegally constructed and unpermitted billboard.
> 30. That a breach has occurred as a direct result of Defendant[]

---

[6] The statute provides:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Thomas['s] . . . conduct.

31. The Plaintiff has suffered harm as a result of Defendant[]Thomas . . . action[] and will continue to suffer harm so long as the conduct continues.

As set out in full context above, CCO, in its cross-complaint, avers that "Thomas . . . procured a breach or violation Cross-Plaintiffs contract with Tennison Brothers thus entitling Cross-Plaintiff to treble damages." CCO relies upon the facts averred in connection with the intentional interference with business relationships to also support its claim for damages based upon Mr. Thomas's alleged interference with contract.

In its order, the trial court determined that Mr. Thomas had no liability for interference with contract, or inducement to breach a contract because of its finding that no breach of contract had occurred. Tennison, however, asserts that a breach of contract did occur because the reasonable time for performance had passed. Regardless, even if we assume, *arguendo*, that there was no breach of contract, Tennessee Code Annotated Section 47-50-109 imposes liability where there has been interference or inducement of breach. "Tenn. Code Ann. §47-50-109 is designed to prevent third parties from interfering with the contractual rights of others by way of inducing one of the parties to breach its obligation to another party." **Dowlen v. Weathers**, No. E2004-00857-COA-R3-CV, 2005 WL 1160627, at *18-19 (Tenn. Ct. App. May 16, 2005). In **Dowlen**, this Court affirmed an award of treble damages, i.e., three times the amount of the commission due to the Plaintiff, after the defendants "effectively removed the owners' obligation to pay the commission owed under the Listing Agreement." *Id*. at *19. By agreeing to the terms of the release, the **Dowlen** plaintiffs argued, and the trial court found, that the defendants had "equipped the owners with a legal basis for not doing that which they were otherwise contractually obligated to do." *Id*. at *7. The crux of Tennison's argument on this tort is that Mr. Thomas's action in erecting an illegal billboard was to preclude CCO from constructing its billboard under its lease agreement with Tennison. Because Mr. Thomas's billboard was built, CCO could not accomplish the purpose of its contract with Tennison, and thus breached that agreement as a direct result of Mr. Thomas's malicious act. Likewise, CCO asserts that, on August 19, 2004, it entered into a lease agreement for the purpose of erecting a billboard on Tennison property. Mr. Thomas knew that CCO had an agreement with Tennison for the construction of a billboard as early as 2004 and intended to induce a breach of the agreement. Mr. Thomas acted maliciously and with an improper motive in rendering CCO unable to perform under its lease and, as a result, CCO sustained damages. Based upon the averments in Tennison's second amended complaint, and in CCO's cross-complaint, we conclude that there are sufficient facts pled in both documents to satisfy the *prima facie* elements for inducement to breach a contract and intentional interference with contract claims.

In sum, the trial court had before it only the writ of inquiry on damages, but, from its order, appears to have considered evidence outside the pleadings on the subject of liability. Having determined, under the applicable standard for default judgments, that CCO and Tennison have succeeded in pleading each of their respective causes of action, and for the foregoing reasons, we conclude that Tennison and CCO are entitled to damages against Mr. Thomas for the foregoing causes of action. Accordingly, we remand for a determination of the appropriate damages. To that end, we now turn to address the types of damages allowed in this case.

## Damages

In ***Dorsett Carpet v. Whitt Title & Marble Distr. Co.***, 734 S.W.2d 322 (Tenn. 1987), our Supreme Court adopted the Restatement Second of Torts §774A to determine damages arising from the interference with business relationships. Specifically, the ***Dorsett*** Court stated that: "One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation. . . ." ***Id***. at 324. Here, Tennison alleges that it has suffered the loss of value of the lease agreement with CCO. Tennison submitted a damages calculation, including the annual increase in rents, indicating a loss over the twenty-year lease term of $419,177.84.

Furthermore, in ***Dorsett***, the Tennessee Supreme Court stated that Tennessee Code Annotated Section 47-50-109 "mandates the trebling of the amount of damages resulting from or incident to the breach of contract." ***Id***. At 324. Indeed, the statute provides that "in every case where a breach or violation of such contract is so procured, the person so procuring shall be liable **in treble the amount of damages resulting from or incident to the breach of contract**." (Emphasis added). Thus:

> In the event that a plaintiff successfully asserts a cause of action under Tennessee Code Annotated section 47-50-109 as well as a punitive damages claim in the common law action for tortious interference with contract, plaintiff is required to elect between remedies. Only after the amount of punitive damages and multiple damages have been assessed is plaintiff required to make an election between the two types of remedies.

***Concrete Spaces, Inc. v. Sender***, 2 S.W.3d 901 (Tenn. 1999). "Punitive damages are not awarded to compensate the injured party, but instead serve to punish the wrongdoer and to deter the wrongful conduct." ***MLGW v. Starkey***, 244 S.W.3d 344, 355 (Tenn. Ct. App. 2007). A defendant must act intentionally, fraudulently, maliciously or recklessly in addition

to proving the elements of tortious interference with contract, for an award of punitive damages. ***Cambio Health Solutions v. Reardon***, 213 S.W.3d 785, 793 (Tenn. 2006). Here, and as discussed above, Tennison and CCO have averred facts sufficient to show that Mr. Thomas engaged in intentional or malicious acts that kept CCO from accomplishing its objective under its contract with Tennison. Accordingly, Tennison and CCO are entitled to elect between treble damages and punitive damages.

Finally, Tennessee Code Annotated Section 47-14-123 authorizes the award of pre-judgment interest. The award of pre-judgment interest is discretionary with the court. The purpose of awarding the interest is to fully compensate a plaintiff for the loss of used funds to which he or she was legally entitled, but it is not to penalize the defendant for wrongdoing. ***Mitchell v. Mitchell***, 876 S.W.2d 830, 832 (Tenn. 1994). Although CCO and Tennison may be entitled to pre-judgment interest, we will defer to the trial court's discretion on remand as to whether to award the interest and, if so, in what amount.

For the foregoing reasons, we reverse the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion, including, but not limited to, calculation of damages. Costs of the appeal are assessed against the Appellee, William H. Thomas, Jr., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE